## UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN

ANGELA BANKER,
BRENDA BRANDON,
JAIMEE COTTER,  Case No:
ANNE PASHENEE, and  Hon.:
LISA THAYER,
individuals,

      Plaintiffs,

v.

CENTRAL MICHIGAN UNIVERSITY,

      Defendant.
_____/
BURGESS SHARP & GOLDEN, PLLC
Attorneys for Plaintiffs
By: Heidi T. Sharp, P69641
43260 Garfield, Suite 280
Clinton Township, MI 48038
(586) 226-2627
heidi@bsglawfirm.com
_____/

## **PLAINTIFFS' COMPLAINT AND JURY DEMAND**

NOW COME PLAINTIFFS, ANGELA BANKER, BRENDA BRANDON, JAIMEE COTTER, ANNE PASHENEE, and LISA THAYER, by and through their attorneys, BURGESS SHARP & GOLDEN, PLLC, and for their Complaint against the above-named Defendant states as follows:

## **PRELIMINARY STATEMENT**

1. This action arises under the Equal Pay Act of 1963, 29 U.S.C. S. § 206(d).

2. Plaintiffs are employees of the Defendant University who for all pertinent times resided within the geographical bounds of the United States District Court for the Eastern District of Michigan.

3. Defendant Central Michigan University ("University") is a public Michigan university located within the geographical bounds of the United States District Court for the Eastern District of Michigan.

4. This court has jurisdiction pursuant to the Equal Pay Act of 1963, a provision of the Fair Labor Standards Act of 1938, as amended.

5. That jurisdiction is otherwise proper in this Court.

6. That venue is otherwise proper in this Court.

## COMMON ALLEGATIONS

7. Plaintiffs incorporate by reference the preceding paragraphs as if they were fully restated herein.

8. Plaintiffs are all currently employed as Dispatchers by the Police Department at Defendant, with various start dates.

9. As Dispatchers, Plaintiffs' primary job duties include operating radio dispatch equipment/communications system 911 and non-emergency telephone equipment, receiving and processing calls for services related to law enforcement, operating computer based telephone and computer-aided dispatch systems, and operating the Law Enforcement Information Network (LEIN) system.

10. On or about June 10, 2012, Nicholas Donaldson ("Donaldson") was hired by Defendant in the role of Dispatcher.

11. As a Dispatcher, Donaldson was hired to perform the same job duties as Plaintiffs.

12. Donaldson was and still is the only male employee in the Dispatcher position with Defendant.

13. At the time of hire, Donaldson had a high school diploma.

14. At the time of hire, Donaldson was Michigan Law Enforcement Information Network (LEIN) certified and had previously received training as a Certified Hostage Negotiator.

15. Donaldson's relevant job related experience included his previous positions as a Dispatcher for Isabella County Central Dispatch from 2005-June 2012, Fire Captain and Training Officer for Lee Township Fire Department from 2004-June 2012, Firefighter/EMT for Shepherd Tri Township Fire Department from 2001-June 2012, Loss Prevention Manager for Kmart from 2003-2005, Security and Surveillance Officer for Soaring Eagle Casino from 2000-2004, and Reserve Police Officer for Shepherd Police Department from 2000-2002.

16. Defendant offered Donaldson a starting rate of pay of $17.00/hour.

17. Donaldson attempted to counter Defendant's offer of $17.00/hour.

18. In response, Defendant offered Donaldson a starting rate of pay of $17.00/hour with an increase to $17.38/hour on or about June 24, 2012.

19. Donaldson accepted Defendant's offer and began employment in 2012.

20. Donaldson's current rate of pay is $19.37/hour. Donaldson has received Cost of Living Adjustments Increases ("COLA") in accordance with the collective bargaining agreement Defendant has with the dispatcher's union, based upon his starting rate of $17.00 per hour.

21. Further, since the date of his hire to current, Donaldson has attended multiple trainings courses and conferences which the Defendant has paid for or reimbursed Donaldson the cost of the training for conferences or training which were not in the field of dispatch. Meaning that as an additional benefit of his employment, Donaldson receives paid-for training in the fields of law enforcement, (hostage) negotiation, and firefighting, including but not limited to the cost of attendance at the training, accommodations, and overtime pay while he attends the training sessions.

22. None of the Plaintiffs have received the same benefit(s) of their employment in regards to paid training or courses in fields other than dispatch. Further, the Plaintiffs do not receive as many opportunities to attend training sessions (in the field of dispatch) as Mr. Donaldson or receive as many

opportunities to receive overtime pay while attending training sessions, in the field of dispatch or otherwise.

## ALLEGATIONS AS TO PLAINTIFF BANKER

23. Plaintiffs incorporate by reference the preceding paragraphs as if they were fully restated herein.

24. On or about January 26, 2011, Plaintiff Angela Banker ("Banker") began her employment with Defendant as a Dispatcher.

25. At the time of hire, Banker had an Associate's degree in Fine Arts, an Associate's degree in Criminal Justice, and a Bachelor of Arts degree in English.

26. At the time of hire, Banker was a certified Federal Corrections Officer through the Federal Law Enforcement Training Center (FLETC), Communications Training Officer (CTO), Certified Hostage Negotiator, certified Michigan Law Enforcement Information Network Terminal Agency Coordinator (LEIN TAC), and Emergency Medical Dispatcher (EMD) certified.

27. Banker's relevant job related experience included her previous positions as a Dispatcher for the Saginaw Chippewa Tribal Police Department from April 2005-January 2011, Personal Assistant for Personal Assistance Options from 2002-2005, Clerk for Subway from 1999-2002, and Sales Associate for JC Penney from 1997-1998.

28. Defendant offered Banker a starting rate of pay of $16.00/hour.

29. Banker attempted to counter Defendant's offer of $16.00/hour.

30. In response, Defendant told Banker there was no room for negotiation.

31. Banker accepted Defendant's offer of $16.00/hour.

32. Since beginning employment with Defendant, Banker has received a Master's degree in English.

33. Banker's current rate of pay is $18.33/hour.

34. Despite having similar Dispatch experience and more education and certifications than Donaldson, a male who holds the same title, duties, and position as Banker, Banker is receiving a lower hourly rate of pay.

## ALLEGATIONS AS TO PLAINTIFF BRANDON

35. Plaintiffs incorporate by reference the preceding paragraphs as if they were fully restated herein.

36. On or about March 3, 2013, Plaintiff Brenda Brandon ("Brandon") began her employment with Defendant as a Dispatcher.

37. At the time of hire, Brandon had a high school diploma.

38. At the time of hire, Brandon was a certified Association of Public-Safety Communications Officials (APCO) Public Safety Telecommunicator, Communications Training Officer (CTO), certified Michigan Law Enforcement Information Network Terminal Agency Coordinator (LEIN TAC), and Emergency Medical Dispatcher (EMD) certified.

6

39. Brandon's relevant job related experience included her previous positions as a Dispatcher for the Chippewa County Central Dispatch from May 2004-March 2013 and Administrative Assistant for the Kinross District Police Department from October 1998-March 2013.

40. Defendant offered Brandon a starting rate of pay of $16.35/hour.

41. Brandon attempted to counter Defendant's offer of $16.35/hour.

42. In response, Defendant told Brandon there was no room for negotiation.

43. Brandon accepted Defendant's offer.

44. Brandon's current rate of pay is $18.24/hour.

45. Despite having a similar educational background and more Dispatcher experience and certifications than Donaldson, a male who holds the same title, duties, and position as Brandon, Brandon is receiving a lower hourly rate of pay.

## ALLEGATIONS AS TO PLAINTIFF COTTER

46. Plaintiffs incorporate by reference the preceding paragraphs as if they were fully restated herein.

47. On or about August 11, 2003, Plaintiff Jaimee Cotter ("Cotter") began her employment with Defendant as a Parking Services Specialist.

48. On or about March 19, 2012, Cotter began cross-training as a Dispatcher for Defendant.

49. Cotter's last rate of pay for her hours worked as a Dispatcher was $17.40/hour.

50. On or about September 11, 2016, Cotter began working full-time as a Dispatcher for Defendant.

51. At the time of hire, Cotter had a Bachelor of Science degree in Business Administration.

52. At the time of hire, Cotter was Michigan Law Enforcement Information Network (LEIN) certified.

53. Cotter's relevant job related experience included her cross-training experience as a Dispatcher for Defendant from March 2012-September 2016 and her previous positions as a Parking Services Specialist for Defendant from August 2003-September 2016 and Pro Shop Clerk for The Pines Golf Course from July 1997-October 2003.

54. Defendant offered Cotter a starting rate of pay of $17.75/hour.

55. Cotter accepted Defendant's offer.

56. Cotter's current rate of pay is $18.19/hour.

57. Despite having similar certifications and more education than Donaldson, a male who holds the same title, duties, and position as Cotter, Cotter is receiving a lower hourly rate of pay.

## **ALLEGATIONS AS TO PLAINTIFF PASHENEE**

58. Plaintiffs incorporate by reference the preceding paragraphs as if they were fully restated herein.

59. On or about September 30, 2012, Plaintiff Anne Pashenee ("Pashenee") began her employment with Defendant as a Dispatcher.

60. At the time of hire, Pashenee had a Bachelor of Science degree in English Language and Literature/Secondary Education.

61. At the time of hire, Pashenee was Michigan Law Enforcement Information Network (LEIN) certified, a certified Michigan Law Enforcement Information Network Terminal Agency Coordinator (LEIN TAC), and Emergency Medical Dispatcher (EMD) certified.

62. Pashenee's relevant job related experience included her previous positions as a Dispatcher for Isabella County Central Dispatch from March 2011-September 2012, Dispatcher for St. Clair County Central Dispatch from May 2009-March 2011, and Communication's Officer for the Port Huron Police Department from October 1993-March 2000.

63. Pashenee was hired out of the same pool of candidates as Donaldson, however, Defendant offered Donaldson the first open position and did not start Pashenee in her position until Donaldson had been employed for several months.

9

At the time of their interviews Pashenee had much more dispatch experience than Donaldson, yet he was selected over her for the first open position.

64. Defendant offered Pashenee a starting rate of pay of $16.35/hour.

65. Pashenee attempted to counter Defendant's offer of $16.35/hour.

66. In response, Defendant told Pashenee there was no room for negotiation.

67. Pashenee accepted Defendant's offer.

68. Pashenee's current rate of pay is $18.24/hour.

69. Despite having more Dispatcher experience, education, and certifications than Donaldson, a male who holds the same title, duties, and position as Pashenee, Pashenee is receiving a lower hourly rate of pay.

## **ALLEGATIONS AS TO PLAINTIFF THAYER**

70. Plaintiffs incorporate by reference the preceding paragraphs as if they were fully restated herein.

71. On or about April 8, 2009, Plaintiff Lisa Thayer ("Thayer") began her employment with Defendant as a Dispatcher.

72. At the time of hire, Thayer had an Associate's degree in Criminal Justice.

73. At the time of hire, Thayer was Emergency Medical Dispatcher (EMD) certified.

74. Thayer's relevant job related experience included her previous positions as an Office and Sales Manager at Clare County Review from 1994-April 2009 and Customer Service Representative for Waste Management from 1993-1994, as well as 3 semesters as an Intern for the Clare County Sherriff Department.

75. Defendant offered Thayer a starting wage rate of $15.50/hour.

76. Thayer asked for a hiring starting rate, but was told by Chief Yeagley when he offered her the position, 'that's all I am going to be able to get out of HR (for you)' and made no further change to his starting wage offer.

77. Thayer accepted Defendant's offer and began employment as a dispatcher.

78. Thayer's current rate of pay is $18.30/hour.

79. Despite having similar certifications and more education than Donaldson, a male who holds the same title, duties, and position as Thayer, Thayer is receiving a lower hourly rate of pay.

## COMMON ALLEGATIONS

80. Plaintiffs incorporate by reference the preceding paragraphs as if they were fully restated herein.

81. Plaintiffs have been paid in a discriminatory and disparate manner throughout their employment with Defendant. Specifically, they have been paid

less or received fewer benefits than male counterparts who have the same rank, duties, or grade because they are female.

82. Plaintiffs have made Defendant aware of the discrepancy on multiple occasions.

83. As a benefit and condition of employment, Defendant offers tuition reimbursement.

84. Defendant justified Plaintiff Banker's lower starting rate of pay by stating that it was due to her stated intent to utilize this benefit.

85. Upon information and belief, shortly after he began employment with Defendant, Donaldson began using the Defendant's tuition reimbursement program in order to pursue an Associate's degree.

86. Upon information and belief, Donaldson did not receive a change in pay for doing so. Banker did not receive an increase in pay when Donaldson used the tuition reimbursement while receiving a higher wage than her.

87. In 2018, Plaintiff Banker met with Michigan Education Association (MEA) union representative, Tena Best, regarding the wage discrepancy.

88. Best responded that Banker was only making $1.00/hour less than Donaldson and she didn't "see what the issue" was, as if to say $1.00 less per hour was not a concern.

89. In or around fall 2018, Plaintiffs requested a wage review from Defendant.

90. Defendant had 90 days to complete Plaintiffs' wage review.

91. Defendant failed to complete Plaintiffs' wage review within the allotted 90 days.

92. As a result, Plaintiffs' filed a confidential complaint with the Office of Civil Rights and Institutional Equity (OCRIE) at Defendant.

93. OCRIE not only failed to investigate Plaintiffs' complaint but also informed HR that the complaint had been filed, in violation of the confidential filing process.

94. On or about March 19, 2019 Plaintiffs met individually with Assistant Director of Human Resources, Cali Clark ("Clark").

95. During these meetings, Clark informed Plaintiffs that Defendant would not be making any adjustment to their rate of pay at that time. Further, each of the Plaintiffs' past career experiences and education was diminished by representatives of human resources in an effort to justify Donaldson's wage rate as compared to Plaintiffs' lesser rate.

96. On or about February 4, 2019, Plaintiff Pashenee submitted a complaint to OCRIE regarding the wage disparity.

97. Despite multiple opportunities to do so, Defendant has failed to correct the wage disparity between Plaintiffs and Donaldson.

98. Plaintiffs have lost wages and benefits of employment including a reduced overtime rate, loss of pay for training, loss of overtime pay while attending training session, and reduced COLA multipliers because of the wage disparity they have been subjected to by Defendant.

## COUNT I
## VIOLATION OF THE EQUAL PAY ACT ("EPA")

99. Plaintiffs incorporate by reference the preceding paragraphs as if they were fully restated herein.

100. Plaintiffs are employees as defined by 29 USC 203(e); 29 USC 206(a); 29 USC 206(d); 29 CFR 1620.1.

101. Defendant meets all of the requirements for employer status under the EPA. 29 USC 203(d).

102. Plaintiffs are females who received and continue to receive less compensation and benefits than a male employee for performing substantially equal work under similar working conditions in violation of the EPA. 29 USC 206(d)(1).

103. Defendant violated and continues to violate the EPA by paying lower wages to female employees than it paid to a male employee for equal work that

required equal skill, effort and responsibility and that were performed under similar working conditions. 29 USC 206(d)(1).

104. The term "wages" encompasses all payments made to an employee as remuneration for employment. 29 CFR 1620.10.

105. As a direct and proximate result of Defendant's pay discrimination on the basis of sex, Plaintiffs have suffered lost wages, benefits, and loss of employment opportunities.

WHEREFORE, Plaintiffs request that this Honorable Court grant whatever legal or equitable relief it finds necessary to compensate Plaintiffs for their lost wages, lost benefits, loss of future wages, liquidated damages, punitive damages, loss of employment and advancement of opportunities, humiliation and embarrassment, mental and emotional distress and loss of the ordinary pleasures of everyday life as a result of Defendant's violations of the Equal Pay Act as amended, attorney fees, costs and interest.

Dated: September 5, 2019

Respectfully submitted,

BURGESS SHARP & GOLDEN, PLLC

By: /s/ *Heidi T Sharp*
Heidi T Sharp, P69641
Attorneys for Plaintiffs
43260 Garfield, Suite 280
Clinton Township, MI 48038
(586) 226-2627
heidi@bsglawfirm.com

## **PLAINTIFFS' DEMAND FOR JURY TRIAL**

Plaintiffs, through their attorney, hereby demand a jury trial.

Dated: September 5, 2019          Respectfully submitted,

BURGESS SHARP & GOLDEN, PLLC

By: /s/ *Heidi T Sharp*
Heidi T Sharp, P69641
Attorneys for Plaintiffs
43260 Garfield, Suite 280
Clinton Township, MI 48038
(586) 226-2627
heidi@bsglawfirm.com